DEREK BROWN
Utah Attorney General
VANESSA R. WALSH (16180)
JUSTIN P. ANDERSON (15526)
Assistant Utah Attorneys General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
*vwalsh@agutah.gov*
*justinpanderson@agutah.gov*

*Attorneys for Defendants D'Amico, Beers, Coombs, Garcia, Gehman, Hardy and Zorn*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J.L. and K.S.,<br><br>Plaintiffs,<br><br>v.<br><br>Jared Garcia, et al.,<br><br>Defendants. | **MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00404<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |

Defendants Sharon D'Amico, Jared Beers, Matthew Coombs, Jared Garcia, Casey Gehman, David Hardy, and Derick Zorn (collectively the "Supervisor Defendants") through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) and DUCivR 7-1, move the Court to dismiss Plaintiffs' Complaint against them. Spencer Kilpack and Sione Tuipulotu are not moving parties.

## TABLE OF CONTENTS

INTRODUCTION AND RELIEF SOUGHT ................................................................... 1

§ 1983 MOTION TO DISMISS STANDARD ............................................................... 1

QUALIFIED IMMUNITY STANDARD ....................................................................... 2

RELEVANT FACTS ..................................................................................................... 4

    The assaults ............................................................................................................ 4

    The Reset ................................................................................................................ 5

    J.L.'s housing assignment ...................................................................................... 5

ARGUMENT .................................................................................................................. 5

    1.   Plaintiffs' collective use of "Supervisor Defendants" is fatal to their claim. .................... 6

    2.   The second cause of action must be dismissed because each supervisor defendant has qualified immunity. ............................................................................ 7

        2.1  No supervisor defendant knew of or disregarded an excessive risk of harm.............. 7

            2.1.1   Plaintiffs have not established actual subjective knowledge. ........................ 8

            2.1.2   There is no supervisory liability.................................................................11

        2.2  The right is not clearly established to put the Supervisor Defendants on notice....... 13

    3.   The third cause of action must be dismissed on multiple grounds. .................................. 13

        3.1  The allegation there was no penological purpose must be disregarded.................... 14

        3.2  No supervisor defendant participated in searching J.L. or K.S. ............................. 15

        3.3  There is no supervisory liability................................................................................ 17

        3.4  The right is not clearly established to put the Supervisor Defendants on notice...... 17

        3.5  K.S. cannot recover for the third cause of action because she did not grieve the Reset...................................................................................................................... 18

    4.   The Fourth Cause of Action must be dismissed on three grounds................................... 19

        4.1  J.L. does not have a protected liberty interest in a housing assignment. ................. 19

        4.2  Coombs, D'Amico, and Hardy did not personally participate in J.L.'s housing assignment.............................................................................................................. 21

        4.3  D'Amico, Coombs and Hardy cannot be sued in their official capacities................ 22

    5.   The Unnecessary Rigor claim must be dismissed because Plaintiffs cannot meet the *Spackman* factors. ............................................................................................. 22

        5.1  There is no flagrant violation.................................................................................. 23

        5.2  Existing remedies redress the injury. ...................................................................... 24

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abbott v. McCotter,*
13 F.3d 1439 (10th Cir.1994) ................................................................................. 19

*Allen v. Bd. of Comm'rs of Cnty. of Wyandotte,*
773 F. Supp. 1442 (D. Kan. 1991) ................................................................... 15, 16

*Alward v. Milyard,*
2012 WL 7681734 (D. Colo. Oct. 1, 2012) ............................................................ 15

*Am. W. Bank Members, L.C. v. State,*
2014 UT 49, 342 P.3d 224 ...................................................................................... 22

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ................................................................................................. 3

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................. 2

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................... 2, 14, 22

*Blackmon v. Sutton,*
734 F.3d 1237 (10th Cir. 2013) ................................................................................ 7

*Blum v. Fed. Bureau of Prisons,*
No. 98–1055, 1999 WL 638232 (10th Cir. Aug. 23, 1999) .................................... 20

*Bott v. DeLand,*
922 P.2d 732 (Utah 1996) ....................................................................................... 23

*Brack v. Ortiz,*
2007 WL 867992 (D. Colo. Mar. 20, 2007) ........................................................... 18

*Brown v. Montoya,*
662 F.3d 1152 (10th Cir. 2011) .............................................................................. 15

*Burke v. Regalado,*
935 F.3d 960 (10th Cir. 2019) ................................................................................ 11

*Cavanaugh v. Woods Cross City,*
No. 1:08-CV-32-TC-BCW, 2009 WL 4981591 (D. Utah 2009) ............................ 24

*Cox v. Glanz,*
800 F.3d 1231 (10th Cir. 2015) .................................................................... 3, 13, 18

*Cox v. Mayer,*
332 F.3d 422 (6th Cir.2003) ................................................................................... 18

*Est. of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons,*
473 F.3d 1334 (10th Cir. 2007) .............................................................................. 20

*Est. of Jensen by Jensen v. Clyde,*
989 F.3d 848 (10th Cir. 2021) ................................................................................ 12

*Estate of Booker v. Gomez,*
745 F.3d 405 (10th Cir. 2014) ................................................................................ 12

*Estrada v. Smart,*
   107 F.4th 1254 (10th Cir. 2024) ................................................................ 18
*Farmer v. Brennan,*
   511 U.S. 825 (1994) ...................................................................................... 7
*Farmer v. Perrill,*
   288 F.3d 1254 (10th Cir. 2002) ................................................................ 14
*Frasier v. Evans,*
   992 F.3d 1003 (10th Cir. 2021) .................................................................. 3
*Glenn v. First Nat. Bank in Grand Junction,*
   868 F.2d 368 (10th Cir. 1989) .................................................................. 24
*Gomes v. Wood,*
   451 F.3d 1122 (10th Cir. 2006) .................................................................. 3
*Griffin v. Romero,*
   399 F. App'x 349 (10th Cir. 2010) .......................................................... 18
*Griffith v. El Paso Cnty., Colorado,*
   129 F.4th 790 (10th Cir. 2025) ................................................................ 17
*Grissom v. Roberts,*
   902 F.3d 1162 (10th Cir. 2018) ................................................................ 19
*Gross v. Pirtle,*
   245 F.3d 1151 (10th Cir. 2001) .................................................................. 2
*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) .................................................................................... 23
*Hayes v. Marriott,*
   70 F.3d 1144 (10th Cir. 1995) .................................................................. 14
*Herrera v. Williams,*
   99 F. App'x 188 (10th Cir. 2004) ............................................................ 19
*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.,*
   No. 24-889, 2026 WL 1593307 (U.S. June 4, 2026) ......................... 2, 14
*Howlett v. Rose,*
   496 U.S. 356 (1989) .................................................................................... 22
*Id. Ullery v. Brad,*
   *ley,* 949 F.3d 1282 (10th Cir. 2020) .......................................................... 3
*Jensen ex rel. Jensen v. Cunningham,*
   2011 UT 17 ................................................................................................... 23
*Johnson v. Gilchrist,*
   No. 09-3063-SAC, 2009 WL 1033755 (D. Kan. Apr. 16, 2009) ............. 9
*Jones v. Bernard,*
   77 Fed.Appx. 467 (10th Cir. 2003) ............................................................ 9
*Jordan v. Fed. Bureau of Prisons,*
   191 F. App'x 639 (10th Cir. 2006) .......................................................... 21
*Keith v. Koerner,*
   707 F.3d 1185 (10th Cir. 2013) .................................................................. 8
*Keith,*
   843 F.3d ........................................................................................................ 12
*Malley v. Briggs,*
   475 U.S. 335 (1986) .................................................................................. 2, 3

*Marshall v. Morton,*
  421 F. App'x 832 (10th Cir. 2011) ...................................................................... 20
*May v. Segovia,*
  929 F.3d 1223 (10th Cir. 2019) ........................................................................ 18
*Mullenix v. Luna,*
  577 U.S. 7 (2015) .............................................................................................. 3
*Nielson v. City of S. Salt Lake,*
  No. 2:06-CV-335-CW, 2009 WL 3562081 (D. Utah 2009) ....................................... 24
*Pahls v. Thomas,*
  718 F.3d 1210 (10th Cir. 2013) .......................................................................... 6
*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................................... 3
*Perry v. Durborow,*
  892 F.3d 1116 (10th Cir. 2018)........................................................................... 12
*Plumhoff v. Rickard,*
  572 U.S. 765 (2014) ........................................................................................... 17
*Porro v. Barnes,*
  624 F.3d 1322 (10th Cir. 2010) .......................................................................... 12
*Reynoldson v. Shillinger,*
  907 F.2d 124 (10th Cir. 1990) ............................................................................ 17
*Rezaq v. Nalley,*
  677 F.3d 1001 (10th Cir. 2012) .......................................................................... 19
*Robbins v. Oklahoma,*
  519 F.3d 1242 (10th Cir. 2008) ........................................................................... 6
*Rodriguez v. Gen. Couns. for Fed. Bureau of Prisons,*
  315 F. App'x 79 (10th Cir. 2009)......................................................................... 20
*Ross v. Blake,*
  578 U.S. 632 (2016) ........................................................................................... 18
*Schneider v. City of Grand Junction Police Dept.,*
  717 F.3d 760 (10th Cir. 2013) ............................................................................ 12
*Serna v. Colorado Dep't of Corr.,*
  455 F.3d 1146 (10th Cir. 2006) ......................................................................11, 12
*Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.,*
  2000 UT 87, , 16 P.3d 533.......................................................................... 22, 23, 24
*Starr v. Downs,*
  117 Fed.Appx. 64 (2004) ................................................................................... 16
*Stine v. Fox,*
  731 F. App'x 767 (10th Cir. 2018)....................................................................... 21
*Sumpter v. Wayne Cnty.,*
  868 F.3d 473 ................................................................................................... 17
*United States v. Hutchinson,*
  573 F.3d 1011 (10th Cir. 2009) .......................................................................... 18
*Vazquez v. Andersen,*
  2019 WL 2602523 (D. Colo. June 25, 2019) ......................................................... 16
*Verdecia v. Adams,*
  327 F.3d 1171 (10th Cir. 2003) .....................................................................7, 8, 11

*White v. Pauly,*
  580 U.S. 73 (2017) ........................................................................................ 23
*Will v. Michigan Dep't of State Police,*
  491 U.S. 58 (1989) ........................................................................................ 22

Statutes

42 U.S.C. § 1983 ................................................................................... 18, 22, 24
42 U.S.C. § 1997e(a) .................................................................................... 18

Rules

Federal Rule of Civil Procedure 8(a)(2) ......................................................... 1
Federal Rule of Civil Procedure 12(b)(6) ......................................................... i
Rule 8 ........................................................................................................ 1, 6

Other Authorities

DUCivR 7-1 ..................................................................................................... i

## INTRODUCTION AND RELIEF SOUGHT

Plaintiffs, inmates at the Utah Department of Corrections ("UDC"), bring one claim against defendants Kilpack and Tuipulotu alleging sexual assault and four claims against the Supervisor Defendants alleging they failed to protect them from those assaults, organized a raid (known as a Reset) on their housing unit that violated the Fourth Amendment, moved J.L. to maximum security without due process, and finally that they were subjected to unnecessary rigor under Art. 1 Sec. 9 of the Utah Constitution. The Supervisor Defendants must be dismissed on the following grounds:

- The Complaint pleads collectively rather than individually. (all claims)

- Claims two and three must be dismissed because each supervisor defendant has qualified immunity.

  o There was no failure to protect because no supervisor defendant knew of an excessive risk of harm and disregarded it. (claim 2)

  o No supervisor defendant personally participated in Plaintiffs' strip searches or created and implemented policies related to the Reset. (claim 3)

  o There is no clearly established right that puts any supervisor defendant on notice.

- Claim four must be dismissed because J.L. does not have a protected liberty interest in a housing assignment.

- Claim five must be dismissed because Plaintiffs cannot satisfy the *Spackman* test.

## § 1983 MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand "detailed factual allegations…[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nor can a complaint simply offer "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Instead, to survive a motion to dismiss, a plaintiff must offer sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, allowing a court to draw the *reasonable* inference that the defendant is liable. Further, the Supreme Court has repeatedly held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Not only must a plaintiff plead facts that allow a court to draw an inference that the defendant is liable for the alleged misconduct, but also that the facts must "rule out obvious alternative explanations for the defendant's conduct." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.,* No. 24-889, 2026 WL 1593307, at *6 (U.S. June 4, 2026). It is plausibility, not possibility that is required. *Id*. at *8. After all, "(anything is possible)". *Id.*

## QUALIFIED IMMUNITY STANDARD

The Tenth Circuit has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court has further held that "[q]ualified immunity shields an [official] from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S.194, 198 (2004). Qualified immunity may be denied only if, on an objective basis, it is obvious that no reasonably competent official would

have concluded that the actions were constitutional. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). But "'if [officials] of reasonable competence could disagree' about the lawfulness of the challenged conduct, then '[qualified] immunity should be recognized.'" *Id*. at 1136 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity creates a rebuttable presumption that shifts a heavy two part burden to the plaintiff to show his allegations (1) "make out a violation of a constitutional right" and (2) that such a right was "'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "For the law to be clearly established, [t]he contours of" the constitutional right at issue must be sufficiently clear that *every* reasonable official would understand that what he is doing violates that right." *Frasier v. Evans,* 992 F.3d 1003, 1014 (10th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). A plaintiff only satisfies this requirement when he "(1) identif[ies] an on-point Supreme Court or published Tenth Circuit decision, or (2) shows the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (internal quotation marks omitted). The Supreme Court has repeatedly held that courts should not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citations and quotations omitted). Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id. Ullery v. Bradley,* 949 F.3d 1282 (10th Cir. 2020) (conduct must be "materially analogous" to the allegations at issue).

**RELEVANT FACTS**[1]

*The assaults*

1.     Plaintiffs were inmates residing at the Utah State Corrections Facility ("USCF").[2]

2.     In January 2025, Defendant Kilpack began grooming J.L. and K.S. by bringing gifts and passing notes.[3]

3.     On February 9, 2025 and continuing through April 2025, Defendant Kilpack sexually assaulted J.L.[4]

4.     Beginning on February 9, 2025 and continuing through April 2025, Defendant Tuipulotu sexually assaulted J.L. and K.S.[5]

5.     Both Kilpack and Tuipulotu utilized camera blind spots for the assaults.[6]

6.     Hardy, upon noticing Kilpack flirting with J.L., put a disciplinary note in Kilpack's file.[7] D'Amico, Beers, Coombs, and Gehman reviewed that note.[8]

7.     Beers, Gehman, and Hardy observed Tuipulotu taking women to protected areas or "lurking" in women's bunk areas[9] and observed Kilpack in Plaintiffs' housing section, spending time at the guard desk, and going to Plaintiffs' bunks.[10]

---

[1] As required, these facts are taken from Complaint and are assumed true for the purposes of this motion only. Discovery will determine their actual truth.
[2] Compl., ¶ 12.
[3] *Id*., ¶¶ 42-44.
[4] *Id*., ¶ 45.
[5] *Id*., ¶ 47, 48.
[6] *Id*., ¶¶ 45, 49, 61, 63.
[7] *Id*., ¶ 62.
[8] *Id*.
[9] *Id*., ¶ 66.
[10] *Id*., ¶ 65.

8.    Garcia was extensively briefed on ongoing legislative audits, historical staffing shortages, audit recommendations and previously identified blind spots.[11]

*The Reset*

9.    USCF conducted a Reset on May 13, 2025.

10.    As part of the Reset, incarcerated women, including J.L. and K.S., were stripped searched and required to provide a urinalysis.[12]

11.    Both male and female corrections officers conducted the Reset.[13]

12.    Zorn was standing at a desk and directly observed naked women.[14]

13.    D'Amico was present.[15]

14.    Beers and Coombs were in the observation booth.[16]

*J.L.'s housing assignment*

15.    At the end of May 2025, J.L. was moved to maximum security for four months.[17]

16.    While there, her phone privileges were limited to 100 minutes per month and she was denied access to programming required for her parole.[18]

## ARGUMENT

Every Section 1983 claim against the Supervisor Defendants fails on the same threshold defect: the Complaint pleads collectively rather than individually. The Complaint also relies on

---

[11] *Id.*, ¶ 29.
[12] *Id.*, ¶¶ 134, 135.
[13] *Id.*, ¶¶ 84, 90.
[14] *Id.*, ¶ 91.
[15] *Id.*, ¶ 92.
[16] *Id.*, ¶ 89.
[17] *Id.*, ¶ 72.
[18] *Id.*

conclusory allegations that are not entitled to the assumption of truth. Once the Court disregards those allegations, as it must, the claims against the Supervisor Defendants must be dismissed. Claims two and three must be dismissed because each supervisor defendant has qualified immunity. They have immunity from claim 2 because no supervisor defendant knew of or disregarded an excessive risk of harm to J.L. or K.S. They have immunity from claim three because no supervisor defendant participated in Plaintiffs' strip searches or created and implemented policies related to the Reset. Claim four must be dismissed because J.L. does not have a protected liberty interest in a housing assignment. Finally, claim five must be dismissed because Plaintiffs have not met the *Spackman* factors.

1.      **Plaintiffs' collective use of "Supervisor Defendants" is fatal to their claim.**

In Section 1983 cases against multiple officials, "it is particularly important … that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). A complaint that uses "the collective term 'Defendants'" or an undifferentiated list, "with no distinction as to what acts are attributable to whom," does not satisfy Rule 8. *Id*. at 1250; Fed. R. Civ. P. 8. The Tenth Circuit requires a "differentiated analysis" of each defendant and condemns "lumping all defendants together." *Pahls v. Thomas*, 718 F.3d 1210, 1231 (10th Cir. 2013). The plausibility standard "may have greater bite" in suits against multiple individual officials. *Robbins,* 519 F.3d at 1249.

The Complaint defines "the Supervisor Defendants" as a seven-person collective and pleads against them as a group throughout. These officials held different offices with different

duties—an executive director, a warden, a deputy warden, a captain, two lieutenants, and a sergeant—yet the Complaint does not say what each individually did or knew. As evidenced throughout this Motion, those flaws are fatal.

**2.    The second cause of action must be dismissed because each supervisor defendant has qualified immunity.**

To meet the first prong of the qualified immunity test, Plaintiffs must show each supervisor defendant knew of an excessive risk of harm to them and consciously disregarded it. To meet the second prong, they must show it is obvious that no reasonably competent official in their positions would have concluded that the actions they took were constitutional. They cannot meet either prong.

**2.1    No supervisor defendant knew of or disregarded an excessive risk of harm.**

A failure-to-protect claim requires both an objectively serious risk and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component is demanding: an official is liable only if he "knows that inmates face a substantial risk of serious harm and disregards that risk." *Id.* at 847. The Supreme Court rejected a "knew or should have known" test; liability "may [not] be premised on obviousness or constructive notice," and an official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … also draw the inference." *Id.* at 837. The standard is much higher than negligence. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). It is equal to criminal recklessness. *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013). Even if a plaintiff establishes both the objective and subjective knowledge, there remains a question of whether the officer responded reasonably to the risk, even if the harm ultimately was not averted *Farmer*, 511 U.S. 825 at 844.

### 2.1.1    Plaintiffs have not established actual subjective knowledge.

Assuming the objective component is met for the purposes of this motion only, Plaintiffs failed to meet the subjective component because they did not plead that any individual supervisor defendant had actual, subjective knowledge. Their theory rests principally on a legislative audit describing chronic understaffing and camera "blind spots." However, the Audit was published in November 2023, approximately 15 months before the events giving rise to the Complaint.[19] Other than a conclusory allegation that Supervisor Defendants failed to take any action, Plaintiffs fail to provide any facts showing inaction by the Supervisor Defendants, or that their inaction led to other incidences of sexual assault between the time of the Audit and the events in the Complaint.

Generalized awareness of understaffing and unmonitored areas is not awareness that Kilpack or Tuipulotu were substantially likely to sexually assault an inmate. Even if a risk could be inferred, the claim still fails because a plaintiff must show the officials "actually drew" the inference; "should have known" is not enough. *Verdecia,* 327 F.3d at 1176. As evidenced in *Keith v. Koerner,* 707 F.3d 1185, 1190 (10th Cir. 2013) the bar is high. In that case the warden knew of dozens of prior incidents of sexual misconduct, inconsistently disciplined offending officers, and tolerated an informal policy permitting staff-inmate sexual contact. *Id.* It was specific, documented knowledge. Here, there are no facts supporting anyone drew any inference.

Outside of the specific allegations listed below, Plaintiffs offer only a conclusory allegation that the Supervisor Defendants collectively had actual and subjective knowledge of sexual abuse because of "understaffing and limited camera coverage, inmate complaints, PREA

---

[19] *Id.,* ¶¶ 30, 64.

reports, disciplinary write-ups, officer reports, and observation and reporting of Defendants Kilpack and Tuipulotu utilizing blind spots and being present in inmate areas to which they were not assigned."[20] Courts routinely dismiss Eighth Amendment deliberate indifference claims when the allegations are too general and conclusory to establish the deliberate indifference standard.

For example, in *Jones v. Bernard*, 77 Fed.Appx. 467, 470 (10th Cir. 2003) (unpublished), the Tenth Circuit affirmed the dismissal of a failure-to-protect claim because the factual allegations lacked sufficient detail and were conclusory. The plaintiff alleged jail officials were deliberately indifferent by placing him in close proximity to members of a gang member who then assaulted him. *Id*. at 469. The plaintiff alleged that the jail official knew that the plaintiff would be attacked, wanted the attack to occur for his own entertainment, and even orchestrated the attack. *Id*. at 469–70. The Court held that these allegations were "conclusory and speculative." *Id*. at 470. "The facts as alleged by plaintiff fail to demonstrate the existence of a known or obvious risk except in the most conclusory of terms." *Id.*

Likewise, in *Johnson v. Gilchrist*, No. 09-3063-SAC, 2009 WL 1033755, at *4 (D. Kan. Apr. 16, 2009) (unpublished), the plaintiff claimed that jail officials failed to protect him from an attack by another inmate. The plaintiff alleged that his attacker "had been yelling and smashing his cell window, was volatile, and had been diagnosed with paranoia and bi-polar blackouts." *Id.* But the allegations that the defendants "knew the environment was unsafe and could have prevented the assault" were "completely conclusory." *Id.*

The only non-conclusory allegations specific to any of the individual supervisors are:

---

[20] *Id*., ¶¶ 28, 124.

- Hardy accused J.L. of flirting with Kilpack and put a note in Kilpack's file,[21] and Beers, Coombs, D'Amico, and Gehman reviewed that note.[22] The only thing those allegations establish is that Hardy addressed the prohibition on flirting with Kilpack and D'Amico Coombs, Gehman, and Beers knew about it. Those actions are a reasonable response and evidence a conscious regard to avert risk.

- Beers, Gehman, and Hardy observed Tuipulotu taking women to protected areas and "lurking" in women's bunk areas[23] and observed Kilpack in Plaintiffs' housing section, spending time at the guard desk, and going to Plaintiffs' bunks.[24] An increased presence does not establish knowledge of sexual assaults. Tuipulotu was working overtime[25] (something meant to address the staffing shortages) and "lurking" is a subjective perception. Kilpack's presence in the housing unit and at the guard desk means only that he was in the housing unit, something that is not surprising given the staff shortages and reality that some officers covered two housing units.[26] Based on those facts, Beers, Gehman, and Hardy's actions do not even rise to the level of negligence, let alone criminal recklessness.

- Beers, Coombs, D'Amico, Garcia, Gehman and Hardy were informed by other inmates of sexual misconduct and did not investigate.[27] Even if true, it is

---

[21] *Id.*, ¶ 62.
[22] *Id.*
[23] *Id.*, ¶ 66.
[24] *Id.*, ¶ 65.
[25] *Id.*, ¶ 52.
[26] *Id.*, ¶ 30(m).
[27] *Id.*, ¶ 68.

reasonable to assume that J.L. and K.S. would not be privy to confidential investigations, making the allegations conclusory.

- Garcia was briefed on audits and recommendations, staffing shortages, and blind spots.[28] Awareness of understaffing and unmonitored areas is not awareness that Kilpack or Tuipulotu were substantially likely to sexually assault an inmate. At best, it is an indicator of an increased risk. A failure to alleviate "a potential risk that should have been perceived, but was not, does not satisfy the deliberate indifference standard of the Eighth Amendment." *Verdecia,* 327 F.3d at 1171. Even assuming in arguendo that Garcia was negligent in not fully staffing the prison or purchasing cameras that covered every potential blind spot, "a finding of unreasonableness is . . . not deliberate indifference." *Id.*

Once the conclusory allegations are stripped away and the impermissible and vague collective allegations are removed, there is no cause of action.

### 2.1.2    There is no supervisory liability.

Section 1983 does not authorize respondeat superior liability for a supervisor based solely on the actions of his subordinates. *Burke v. Regalado,* 935 F.3d 960, 997 (10th Cir. 2019). To establish a §1983 claim against a supervisor, "a plaintiff must first show the supervisor's subordinates violated the constitution." *Serna v. Colorado Dep't of Corr.,* 455 F.3d 1146, 1151 (10th Cir. 2006). Once an underlying violation is established, the plaintiff must demonstrate an "affirmative link" between the supervisor and the violation, "namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* Thus, to

---

[28] *Id.*, ¶ 29.

prevail on a § 1983 supervisor liability claim, the plaintiff must meet the same affirmative link requirements that are required of all § 1983 defendants, namely the supervisor's "(1) personal involvement; (2) causation, and (3) state of mind." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018).

A plaintiff can establish personal involvement by a supervisor by showing that the supervisor "created, promulgated, implemented, or had responsibility over" an allegedly infirm policy. *Id.*; *Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 858 (10th Cir. 2021). To establish causation, the plaintiff must show that the supervisor "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Keith*, 843 F.3d at 847. The state of mind that is required for supervisor liability "depends on the type of claim a plaintiff brings," *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013), but "'can be no less than the mens rea required' of the subordinates to commit the underlying constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)).

Here, there are no allegations of who Beers, Coombs, D'Amico, Garcia, Gehman, Hardy, or Zorn's subordinates are. Let alone what they did that violated Plaintiffs' constitutional rights. Nor have Plaintiffs established the requisite affirmative link. The only allegations are that the Supervisor Defendants collectively maintained a policy, custom, and practice of understaffing;[29] allowing personnel to move in isolated, unmonitored zones;[30] minimizing complaints of abuse;[31]

---

[29] *Id.*, ¶ 35.
[30] *Id.*
[31] *Id.*, ¶ 36, 37.

and denying materials related to sexual assault.[32] Those conclusory allegations do not establish any supervisor defendant's personal involvement or their state of mind. Nor do they establish what each defendant did that set in motion a series of events that caused Plaintiffs harm.

### 2.2 The right is not clearly established to put the Supervisor Defendants on notice.

Plaintiffs bear the burden of establishing the body of case law puts the unlawfulness of each supervisor defendant's actions beyond debate. To meet his burden, they need to identify precedent, either from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits that would inform a reasonable supervisor that addressing a prohibition on flirting, observing an officer's increased presence in a housing unit, or being briefed on audits and staff shortages violated the constitution. *Cox v. Glanz*, 800 F.3d 1231, 1247. They have not met that burden.

### 3. The third cause of action must be dismissed on multiple grounds.

Plaintiffs claim the Reset violated the Fourth and Fourteenth Amendments because it constituted an illegal search. This cause of action must be dismissed for four reasons. First, Plaintiffs have not established the lack of a penological purpose for the strip search. Second, no individual supervisor defendant personally participated in searching J.L. or K.S. Third, there are no unconstitutional policies, customs and practices related to the Reset. Fourth, it is not clearly established that an officer who did not strip search a plaintiff can be held liable. Additionally, K.S. cannot recover because she did not grieve.

---

[32] *Id.*, ¶ 38.

### 3.1    The allegation there was no penological purpose must be disregarded.

A strip search performed by female officers with male officers present is not per se unconstitutional. While prisoners retain a limited constitutional right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex, that right must be exercised with due regard for the requirements of prison administration. *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995). A strip search does not require the complete exclusion of members of the opposite sex from areas in which searches are conducted. *Id.* An inmate can be subjected to a strip search in front of others if it is reasonably related to a legitimate penological interest. *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002).

Here, the only allegation supporting the Reset did not have a penological purpose is a legal conclusion not entitled to the assumption of truth. Even if it were more than a conclusory statement, as reiterated by the Supreme Court in June 2026, a plaintiff must plead facts that "rule out obvious alternative explanations for the defendant's conduct." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.,* 146 S. Ct. 1391, 1399 (2026) (citing *Twombly*, 550 U.S. at 567). While it is "possible" the Reset was done to retaliate against J.L. and K.S. for reporting sexual abuse, it is not plausible UDC would engage in a labor intensive and expensive Reset of an entire housing facility simply to punish female inmates reporting sexual assault, particularly in light of the allegation that Resets occurred in other units of the prison.[33] The obvious alternate explanation is that the prison conducts Resets for contraband detection and deterrence, institutional security, and gang affiliation identification. As Justice Jackson just reminded us, it is plausibility, not possibility, that's necessary saying "('anything is possible')". *Id.* at 1403.

---

[33] *Id.*, ¶ 82.

### 3.2    No supervisor defendant participated in searching J.L. or K.S.

As is the case with the second cause of action, Plaintiffs attribute actions to the Supervisor Defendants collectively, not individually. The Complaint alleges they organized and participated in the strip search,[34] engaged in coordinated efforts to humiliate and degrade Plaintiffs,[35] and compelled incarcerated women to strip naked, squat, and cough in the unobstructed view of male guards and supervisors.[36] This is fatal to their claim because an individual's liability under § 1983 must be based on either personal involvement in the unconstitutional conduct or supervisory liability for an actor's conduct. *See Brown v. Montoya,* 662 F.3d 1152, 1163 (10th Cir. 2011).

In the strip search context, courts within the Tenth Circuit have consistently held that an officer who did not personally participate in the search of an individual plaintiff cannot be held individually liable. In *Alward v. Milyard*, 2012 WL 7681734, at *7 (D. Colo. Oct. 1, 2012), *report and recommendation adopted*, 2013 WL 948901 (D. Colo. Mar. 12, 2013) several defendant officers were present at a strip search but were not alleged to have participated in the actual strip searches of the plaintiff. *Id.* at *8. The court held because those defendants did not personally participate in the removal of Plaintiff's clothes, the strip search failed to establish a Fourth Amendment unreasonable search claim against them. *Id.*

Similarly, in *Allen v. Bd. of Comm'rs of Cnty. of Wyandotte*, 773 F. Supp. 1442 (D. Kan. 1991) a detainee was strip searched "in a rude, insolent, abusive, and violent manner" by an officer in a closet with the door open, allowing anyone outside the door to observe. *Id.* at 1446.

---

[34] *Id.*, ¶¶ 4, 138, 149.
[35] *Id.*, ¶ 155.
[36] *Id.*, ¶ 135.

Among others, she sued the county sheriff, sergeant, and deputy. The Court held they were not liable under § 1983 for a strip search, finding that there was no indication they directly participated in or otherwise encouraged the alleged strip search. *Id.* at 1452.

The Tenth Circuit has further confirmed that even physical proximity during an unlawful search is insufficient to establish personal participation. In *Vazquez v. Andersen*, 2019 WL 2602523 (D. Colo. June 25, 2019) an officer conducted a pat down of a suspect while another officer acted as a "cover officer". *Id.* at *1. The cover officer did not observe the pat down however did see the other officer wheel back and say that Plaintiff just elbowed him in the face. *Id.* at *11. Plaintiff argued the cover officer was "a material participant in the constitutional violation" because he was standing next to the officer that conducted the pat down. *Id.* at 17. The Court applied *Starr v. Downs*, 117 Fed.Appx. 64 (2004) and held that being in close proximity was insufficient to satisfy the personal participation requirement for a § 1983 unlawful search claim. *Id.*

The allegations here are that Zorn was standing at a desk and directly observed naked women,[37] D'Amico was present,[38] and Beers and Coombs were in the observation booth.[39] Observing other women is not a search of these Plaintiffs. There are no allegations that any supervisor defendant strip searched K.S. or J.L., or personally observed K.S. or J.L. being searched or naked. They allege only that four of the seven supervisor defendants were present and viewed unknown naked women. But that is not enough. It is well settled that a plaintiff must

---

[37] *Id.*, ¶ 91.
[38] *Id.*, ¶ 92.
[39] *Id.*, ¶ 89.

prove each defendant personally participated in a constitutional violation. *Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 822 (10th Cir. 2025).

Further, Plaintiffs cannot rely on harm to other inmates as a basis for their claims. "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "To the extent a complaint concerns 'inmates' rather than the plaintiff himself, it is dismissable for failure to allege the plaintiff's standing to proceed." *Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990). Allegations that other inmates endured a group search are irrelevant to whether the specific searches of Plaintiffs were unreasonable. *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 483, FN3 (6th Cir. 2017).

### 3.3　There is no supervisory liability.

If Plaintiffs' claim is for supervisory liability for the Reset generally, that theory of recovery also fails. Using the standard from section 2.1.2 above, Plaintiffs have failed to show who Beers, Coombs, D'Amico, Garcia, Gehman, Hardy, or Zorn's subordinates are or how they violated Plaintiffs' rights, including whether they were present during the Reset or interacted with either J.L. or K.S. Even if they had, they have not established any supervisor defendant's personal involvement or state of mind. Because the only policies, customs and practices that are referenced relate exclusively to the sexual assaults – not to the Reset – there can be nothing that set in motion a series of events that any defendant knew or reasonably should have known would cause others to deprive Plaintiffs of their constitutional rights.

### 3.4　The right is not clearly established to put the Supervisor Defendants on notice.

Plaintiffs bear the burden of establishing the body of case law puts the unlawfulness of each Supervisor Defendant's actions beyond debate. To meet his burden, they will need to

identify precedent, either from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits that would inform a reasonable supervisor that being present when strip searches were happening, without participating, violates the constitution. *Cox v. Glanz*, 800 F.3d 1231, 1247. As evidenced in the case law above, Plaintiffs cannot make that showing.

### 3.5    K.S. cannot recover for the third cause of action because she did not grieve the Reset.

The Prison Litigation Reform Act ("PLRA") requires, among other things, that any "prisoner confined in jail, prison, or other correctional facility" exhaust their administrative remedies before they can bring an action regarding prison conditions under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). "Congress used the term 'any' in § 1997e(a). The term 'any' ensures that the definition has a wide reach[.]" *Estrada v. Smart*, 107 F.4th 1254, 1265–66 (10th Cir. 2024) (citing *United States v. Hutchinson*, 573 F.3d 1011, 1022 (10th Cir. 2009). A halfway house is a "correctional facility". *Brack v. Ortiz*, 2007 WL 867992, at *16 (D. Colo. Mar. 20, 2007) (requiring inmate in a halfway house to plead exhaustion of administrative remedies); *Cox v. Mayer,* 332 F.3d 422, 425 (6th Cir.2003) (determining that PLRA applies to a prisoner who filed suit during his confinement without exhausting his administrative remedies and thereafter was released from prison)). "This exhaustion requirement is mandatory." *Griffin v. Romero*, 399 F. App'x 349, 351 (10th Cir. 2010) (unpublished). "[A] court may not excuse a failure to exhaust, even to take ['special'] circumstances into account." *Ross v. Blake*, 578 U.S. 632 (2016). It is the status of the prisoner at the time she brought the claim that determines whether administrative remedies must be exhausted. *May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019).

The third cause of action relates to the Reset. While the Complaint alleges "Plaintiffs have diligently exhausted all administrative remedies[40] the allegations relate only to J.L.'s attempt to grieve, and only in response to sexual assaults. It is bare of any allegations that K.S. grieved anything, including the Reset. Because exhaustion is mandatory, and K.S. cannot cure the deficiency, she cannot recover for claim 3 and any cause of action she may have must be dismissed with prejudice.

**4.      The Fourth Cause of Action must be dismissed on three grounds.**

The fourth cause of action alleges J.L. was deprived of procedural due process rights. Specifically, she alleges she was placed in maximum security without a hearing. This claim fails on three fronts. First, there is no protected liberty interest in a housing change. Second, D'Amico, Coombs and Hardy did not personally participate in the assignment. Finally, D'Amico, Coombs and Hardy cannot be sued in their official capacities.

**4.1      J.L. does not have a protected liberty interest in a housing assignment.**

It is well established that lawfully incarcerated persons retain only a narrow range of protected liberty interests. *Abbott v. McCotter,* 13 F.3d 1439, 1442 (10th Cir.1994). The Due Process Clause itself creates no interest in avoiding transfer to more adverse conditions. *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012); *Herrera v. Williams*, 99 F. App'x 188, 189–90 (10th Cir. 2004) (Prisoners do not have a liberty interest in a particular prison classification). The government may create a liberty interest protected by the Due Process Clause, which is generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th

---

[40] *Id.*, ¶¶ 106-110.

Cir. 2018).

The Tenth Circuit has identified relevant factors for evaluating whether a prison housing move creates a liberty interest. Those factors might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, and (4) the placement is indeterminate. *Est. of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons,* 473 F.3d 1334, 1342 (10th Cir. 2007). The court also cautioned that any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. *Id.* at 1342.

J.L. alleges that approximately 6 weeks after Kilpack was fired, she was moved to administrative segregation for four months, where her phone privileges were limited to 100 minutes/month and she was denied programming access. Fewer phone minutes and programming restrictions are not atypical of protective custody. It is an ordinary incident of prison life. *See Rodriguez v. Gen. Couns. for Fed. Bureau of Prisons*, 315 F. App'x 79, 80 (10th Cir. 2009) (sixty-day denial of commissary and telephone privileges); *Marshall v. Morton*, 421 F. App'x 832 (10th Cir. 2011) (restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life); *Blum v. Fed. Bureau of Prisons,* No. 98–1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (holding that ninety-day confinement without store privileges, radio, and phone calls did not differ in significant degree and duration from ordinary incidents of prison life to create a protected liberty interest). The transfer of an inmate to less amenable and more restrictive quarters is well within the terms of confinement ordinarily contemplated by a prison

sentence and therefore, "administrative segregation is the sort of confinement ... inmates should reasonably anticipate receiving at some point in their incarceration" and does not involve an interest independently protected by the Due Process Clause. *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 650 (10th Cir. 2006).

Nor does the alleged effect on J.L.'s release date supply a liberty interest: the Tenth Circuit distinguishes mandatory earned credits, which can create such an interest, from discretionary programming and credits, which do not, and protection attaches only where the State's action "inevitably"—not merely possibly—affects the duration of the sentence. *Stine v. Fox*, 731 F. App'x 767, 770 (10th Cir. 2018). The Complaint alleges only that segregation prevented J.L. from completing programming that "resulted in" rescission of a release date, not that she was entitled to mandatory credits that were revoked. Because there is no protected liberty interest, this claim must be dismissed with prejudice.

### 4.2    Coombs, D'Amico, and Hardy did not personally participate in J.L.'s housing assignment.

Again, J.L. fails to provide notice to each defendant of the basis of the claims against them. J.L. alleges that one or more of the Supervisor Defendants "personally participated in the decision to deny [J.L.'s] request [to be placed on OMR] or ratified that denial[41] and it "was done at the direction of, or with ratification by, Defendant D'Amico and one or more of the other Supervisor Defendants."[42] Yet this claim seeks to recover from only D'Amico, Coombs and Hardy. This highlights the importance of the *Robbins* standard – if the Supervisor Defendants each took this action, what distinguishes the defendants named in this claim from the defendants

---

[41] *Id.*, ¶ 74.
[42] *Id.*, ¶ 69.

that are not. Further, it is a conclusory allegation masquerading as a factual one and is not entitled to the assumption of truth. *Twombly*, 550 U.S. at 555. Because they did not personally participate, they must be dismissed from this claim.

### 4.3    D'Amico, Coombs and Hardy cannot be sued in their official capacities.

Section 1983 provides for a remedy against a "person" who acts "under color of state-law" to deprive an individual of a federal right. 42 U.S.C. § 1983. But the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A suit for damages against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Id.* "[T]he State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court." *Howlett v. Rose*, 496 U.S. 356, 365 (1989).

### 5.    The Unnecessary Rigor claim must be dismissed because Plaintiffs cannot meet the Spackman factors.

To recover monetary damages under the Utah Constitution, a plaintiff must establish: (1) the plaintiff "suffered a 'flagrant' violation of his or her constitutional rights"; (2) "existing remedies do not redress [the plaintiff's] injuries"; and (3) "equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 23–25, 16 P.3d 533, 538–39. When these essential elements are not set forth in the complaint dismissal for failure to state a claim is proper. *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 40, 342 P.3d 224.

### 5.1 There is no flagrant violation.

"[A] plaintiff must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights." Spackman, 2000 UT 87, ¶ 23. The Utah Supreme Court originally explained the meaning of "flagrant violation" in *Spackman*, 2000 UT 87, ¶ 23, 16 P.3d at 538. Borrowing from the concept of qualified immunity as articulated by the U.S. Supreme Court, the *Spackman* court held that for a violation to be flagrant, "a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'" *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Utah Supreme Court has said that a right is clearly established when "its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 66. "The requirement that the unconstitutional conduct be 'flagrant' ensures that a government employee is allowed the ordinary 'human frailties of forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation.'" *Id*. (quoting *Bott v. DeLand*, 922 P.2d 732, 739-40 (Utah 1996)). This standard mirrors the clearly established analysis of federal qualified immunity, which requires that the "clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017).

Here it is completely unclear what the alleged flagrant violations are for each defendant. It is brought against all defendants with no distinction between which defendant took what action and why that action violated Plaintiffs' rights under the Utah Constitution. It is a catch-all cause of action stating everyone violated Art. 1 Sec. 9. Is the alleged violation related to the Reset? Is it the change to J.L's housing? Is it the alleged failure to protect? It is not the defendants (nor the Court's) responsibility to sift through the Complaint to identify what action each defendant took

to determine if there is a clearly established right and if that right was violated by any individual defendant.[43] *See Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371-72 (10th Cir. 1989).

### 5.2    Existing remedies redress the injury.

Plaintiffs also cannot satisfy the second prong of the *Spackman* test. The second prong states that "a plaintiff must establish that existing remedies do not redress his or her injuries." *Spackman,* 2000 UT 87, ¶ 24, 16 P.3d at 538. "This second requirement is meant to ensure that courts use their common law remedial power cautiously and in favor of existing remedies." *Id.* at 539. Courts have consistently declined to award damages when 42 U.S.C. § 1983 is an adequate remedy. *See Nielson v. City of S. Salt Lake*, No. 2:06-CV-335-CW, 2009 WL 3562081 at *9 (D. Utah 2009) (summary judgment of plaintiff's state constitutional law claims was appropriate because § 1983 provides an adequate remedy at law); *Cavanaugh v. Woods Cross City*, No. 1:08-CV-32-TC-BCW, 2009 WL 4981591 at *6 (D. Utah 2009), *aff'd*, 625 F.3d 661 (10th Cir. 2010) ("Plaintiffs cannot state a claim for damages under the Utah Constitution because their injuries can be fully redressed through their 42 U.S.C. § 1983 claim.") (same).

Plaintiffs already have claims rooted in § 1983 for the same facts and circumstances and therefore have an adequate remedy. Claim 5 is based on the same set of facts as claims two, three and four. There is nothing that distinguishes this cause of action from the others. This cause of action is the proverbial second bite of the apple and must be dismissed with prejudice.

---

[43] For example, Zorn could not have committed a flagrant violation because there are no allegations he knew about any sexual assault.

## CONCLUSION

For the reasons stated above, Plaintiffs have failed to state a claim for every cause of action against the Supervisor Defendants. That failure must result in dismissal.

RESPECTFULLY SUBMITTED this 31st day of July, 2026.

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/ Vanessa R. Walsh*
VANESSA R. WALSH
JUSTIN P. ANDERSON
Assistant Utah Attorneys General
*Attorneys for Defendants D'Amico, Beers, Coombs, Garcia, Gehman, Hardy and Zorn*